757 So.2d 709 (1999)
Otis MINGO
v.
Richard STALDER, et al., Warden C.M. Lensing, Carla Maxwell.
No. 98 CA 2798.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
Otis Mingo, St. Gabriel, for Plaintiff/appellant, Pro Se.
Annette M. Viator, Leonard Bruce Dodd, Baton Rouge, for defendants/appellees, Richard Stalder, et al.
Before: WHIPPLE, FITZSIMMONS and KUHN, JJ.
WHIPPLE, J.
In this appeal, Otis Mingo, an inmate in the custody of the Louisiana Department of Public Safety and Corrections ("the Department") at Hunt Correctional Center, challenges the Department's determination of his release date based upon the calculation of good time credits earned. Plaintiff claims that the Department has miscalculated the amount of time he has accumulated in good time credits. After a final administrative decision determining that the Department had not erred in calculating Mingo's good time earned nor his release date, plaintiff appealed to the district court. The district court reviewed Mingo's claim and in accordance with the recommendation in the Commissioner's report, *710 granted judgment in favor of the defendants and dismissed petitioner's suit with prejudice. From this judgment, plaintiff appeals.

FACTS AND LAW
Otis Mingo was arrested on January 26, 1980 and charged with attempted armed robbery, in violation of LSA-R.S. 14:64 and 27. The offense occurred on January 25, 1980 in East Baton Rouge Parish. Mingo was found guilty of the charge and on May 18, 1981, was sentenced to forty years in the Louisiana State Penitentiary without benefit of parole, probation or suspension of sentence. At the time of his sentencing, former LSA-R.S. 15:571.4, as amended by Acts 1977, No. 665, set forth the method of computing good time credit. Paragraph (B) of former LSA-R.S. 15:571.4 provided in pertinent part:
Good time for an inmate's sentence shall be computed on the basis of fifteen days per month for time actually served, which amount shall be applied toward diminution of sentence, if the crime for which he was sentenced was committed on or after September 10, 1977.
This provision remained in force until January 1, 1992 at which time it was repealed and replaced by LSA-R.S. 15:571.3(B), which was enacted by Acts 1991, No. 138 and provides in pertinent part:
Every inmate in the custody of the department who has been convicted of a felony and sentenced to imprisonment for a stated number of years or months may earn, in lieu of incentive wages, a diminution of sentence by good behavior and performance of work or self improvement activities, or both, to be known as "good time".
* * * * * *
The amount of diminution of sentence allowed under the provisions of this Section shall be at the rate of thirty days for every thirty days in actual custody, including time spent in custody with good behavior prior to sentence for which defendant is given credit.
Thus, after January 1, 1992, the effective date of Acts 1991, No. 138, a state prison inmate could receive thirty days good time credit toward diminution of sentence for every thirty days spent in prison. However, Section 5 of Act No. 138 limited the Act's temporal application by providing:
The provisions of this Act shall apply only to persons sentenced on or after the effective date of this Act and shall apply prospectively only to the remaining portion of any sentence of any person serving a sentence or sentences on or after the effective date of this Act.
Pursuant to Section 5 of Act 138, any change in the amount of good time accrued would not apply retroactively to time already served under a sentence imposed prior to the effective date of the Act, but would apply to the remaining time of a sentence imposed prior to January 1992. Thus, it is clear that because Mingo was sentenced in 1981, Act 138 applies only to that portion of his sentence which remained to be served in 1992.

STANDARD OF REVIEW
Louisiana Revised Statute 15:1177 sets forth the appropriate standard for judicial review of administrative decisions by the Department of Public Safety and Corrections and limits the court's review to issues presented in the petition for judicial review and the administrative remedy request. LSA-R.S. 15:1177(A)(5). Furthermore, the reviewing court may reverse or modify the administrative decision only if substantial rights of the appellant have been prejudiced because the administrative decisions or findings are (1) in violation of constitutional or statutory provisions, (2) in excess of the statutory authority of the agency, (3) made upon unlawful procedure, (4) affected by other error of law, (5) arbitrary, capricious or characterized by abuse of discretion or (6) manifestly erroneous in view of the reliable, probative and *711 substantial evidence on the whole record. LSA-R.S. 15:1177(A)(9).

DISCUSSION
Mingo contends that the Department has miscalculated his good time earned and therefore, his release date. Mingo maintains he should be released in the year 2000, whereas the department contends that Mingo's release date is not until the year 2003. After reviewing the Department's computations, and applying the appropriate standard of review, we find no error in the Department's calculation of his release date as sometime in 2003.
Mingo served one year, three months and 22 days between the date he was arrested, January 26, 1980, and the date he was sentenced, May 18, 1981. Under the law at the time of Mingo's arrest and sentencing, he was not entitled to receive good time credit for time served prior to the imposition of the sentence. LSA-C.Cr.P. art. 880; Clement v. Jones, 466 So.2d 492, 493 (La.App. 1st Cir.), writ denied, 474 So.2d 943 (La.1985); Foster v. Louisiana Department of Corrections, 382 So.2d 986, 987 (La.App. 1st Cir.1980); cf., LSA-R.S. 15:571.3(B) as amended by Acts 1991, No. 138. Thus, Mingo was entitled to receive only "straight time" credit for the one year, three months and twenty-two days he served prior to his sentencing.
Once Mingo was sentenced in May 1981, he began accruing good time credits at the rate of fifteen days per month of time actually served. See former LSA-R.S. 15:571.4(B) as amended by Acts 1977, No. 665. Thus, from May 18, 1981 until January 1, 1992, Mingo served ten years, seven months and thirteen days. During this time, he accrued fifteen days per thirty days of good time which equals approximately five years, three months and twenty-three days. Thus, as the Department notes, the total time accruing between his arrest on January 26, 1980, and January 1, 1992, after taking into account actual time served and applicable good time credits, was approximately seventeen years, three months and eight days.[1] Accordingly, as of January 1, 1992, of Mingo's forty year sentence, there remained approximately twenty-two years, nine months and two days for Mingo to serve.
After January 1, 1992, the effective date of Acts 1991, No. 138, Mingo began accruing good time at the rate of thirty days per thirty days in custody. Thus, with twenty-two years, nine months and two days left to serve, Mingo would have to spend approximately one half of that time in actual custody, or approximately eleven years, four months and sixteen days in order to complete his sentence with the benefit of good time credits. LSA-R.S. 15:571.3(B). Therefore, we find no error by the Department in its computation of Mingo's release date as sometime in the year 2003.[2]

CONCLUSION
After reviewing the record in its entirety, we find no merit to plaintiffs claims. We conclude that the Department has correctly applied the law to calculate Mingo's accrued good time credits and anticipated year of release. For the foregoing reasons, the judgment dismissing Mingo's claims with prejudice is affirmed. All costs of this appeal are assessed against the appellant, Otis Mingo.
AFFIRMED.
FITZSIMMONS, J., concurs.
NOTES
[1] This figure is arrived at by adding Mingo's pre-sentence time served (one year, three months, twenty-two days), plus his actual time served between sentencing and January 1, 1992 (ten years, seven months, thirteen days), plus good time credits accrued between sentencing and January 1, 1992 (five years, three months, twenty three days).
[2] We note that the record herein does not set forth any exact date in 2003 as Mingo's anticipated release date. Accordingly, this issue is not presented for our review and we decline to calculate a release date.